ᴠ ELIJAH GROVER *versus* JOHN DRUMMOND.

Where the tenant granted to the demandant "a certain lot of land situate on my home farm in W. on the west side of the road," containing twenty acres, "the said lot to contain one acre in such shape as the said (demandant) may choose," and "said one acre is supposed to contain a ledge of limestone or marble;" and at the time of the conveyance there was upon the twenty acres a ledge of limestone or marble, and at a distance therefrom a dwellinghouse, barn and other buildings; *it was held,* that the demandant had no right so to locate his acre, as to include a ledge of limestone and marble, and from thence to run a narrow strip of land to the buildings, and include within his one acre lot the land on which the buildings stood.

If the prevailing party summon witnesses to prove certain facts under the direction of his counsel, yet if the testimony they would have given on the trial be inadmissible, and therefore rejected, he will not be allowed to tax their travel and attendance against the other party in his bill of costs.

THIS action was a writ of entry, demanding a tract of land in Winslow, containing one acre, in an irregular form, on which stood a dwellinghouse, barn and other buildings. The case came before the Court upon the following report of the trial before WHITMAN C. J.

This is a real action wherein the demandant claimed one acre of land as set forth in his writ. The general issue was pleaded. In order to make out his title to the demanded premises, the plaintiff introduced a deed, dated the 25th of March, 1837, from the defendant, purporting to convey to him "a certain lot of land situate on my home farm in Winslow and on the west side of the road leading to Augusta, to be selected by said Grover or his assigns any where on my said farm west of said road, and if the location of the lot of land should be at a distance from said road, a good and sufficient passage way from said road to the place where said lot may be selected, and never obstructed by me or my heirs or assigns, the said lot to contain one acre, in such shape as said Grover or his assigns may choose, all to be according to my bond to John Reed of Clinton, dated Oct. 1836, reference thereto being had, will fully appear, said one acre is supposed to contain a ledge of limestone or marble." He further proved that

on the 2d of July, 1841, he caused the acre of land described
in his writ to be run out by a surveyor, and notified the de-
fendant, that he claimed that acre as the one conveyed to him
by the deed aforesaid.   The defendant, in order to prove that
a particular acre of land different from the one described in
the plaintiff's writ, and containing the ledge of limestone or
marble, offered to prove by parol that at the time the bond
aforesaid was given, the said Reed, the obligee in said bond,
took specimens in the presence of the defendant, from the ledge
on the acre of land delineated on the plan hereto annexed, and
therein described as the one on which the executions against
Grover were levied ; and that when he (Reed) sold said bond
to the plaintiff, which was in Feb. 1837, he showed said speci-
mens to the plaintiff, and told him from what ledge they were
taken, and that the plaintiff replied, he knew where the ledge
was, and had seen it as he passed the road.   That afterwards,
in October, 1837, the said Reed called on the plaintiff to pay
the notes which he had given him for the assignment of said
bond, and the plaintiff refused to pay, saying that the ledge
aforesaid was not so good as he expected, and that he got little
or no value by his deed ; that said ledge is the only one of
limestone or marble of any value known on the land of the
defendant west of the road, and that this ledge is considered
valuable, and to be worth four or five hundred dollars.   That
the acre as run out by the plaintiff and as delineated on said
plan, contains only a small ledge of limestone which is in the end
of said last mentioned acre in the brook, and is of very in-
ferior quality, and of little or no value ; that the remainder of
the acre so run out contains no limestone or marble, but includes
the defendant's house and other buildings which are worth ten
or twelve hundred dollars; all which testimony the Court ruled
to be inadmissible.   The defendant, in order to show a selection
by the plaintiff under the deed aforesaid of the acre of land
containing the ledge of limestone and described on said plan
as the one levied on, introduced a copy of a levy of an execu-
tion against the plaintiff, dated the 4th Nov. 1837, and duly
recorded, and proved that the plaintiff within one year after

said levy paid the amount due on said execution to the defendant, and thereby redeemed the land from the levy.    The defendant further introduced the copy of the levy of another execution against the plaintiff on the same acre of land as that levied on as aforesaid, dated 25th of April, 1840, which last mentioned levy has not been redeemed.    It is agreed that if the evidence offered by the defendant as aforesaid, and excluded by the Court, was admissible, a new trial is to be granted; otherwise a nonsuit or default is to be entered according to the opinion of the Court, upon the evidence as reported in the case.    The writ and copies of the levies above mentioned are to be referred to and made part of this report, but need not be copied, and also the bond from Drummond to Reed.

The plan, referred to in the report of the case, was not among the papers which came into the hands of the Reporter. It seemed to be the understanding of the parties at the argument, that the acre of land demanded, had been so selected as to include a small limestone or marble quarry, and from thence to extend in a narrow strip to the dwellinghouse, and there include the house, barn and other buildings within the limits of the acre.

*Boutelle* and *Noyes*, for the tenant, after adverting to the facts in the case, contended that the presiding Judge erred in excluding the testimony offered.    It is always competent to show by parol evidence the situation and circumstances of the premises conveyed, at the time of the sale.    We do not contend for the right to alter or control the deed, but merely to show, that the location of the quarry, referred to in the deed was well known, and especially to the parties, and what quarry was then intended by that term; and to show what buildings were upon the premises, and where situated.    7 Wheat. 7; 14 Maine R. 233; 15 Maine R. 109; 3 Stark. Ev. 1021, 1047; 6 Pick. 460; 13 Pick. 261; 4 Metc. 438.

The demandant, on receiving his deed and before any selection, had such an interest in the twenty acres as could be conveyed by deed, or be taken by the levy of an execution.

4 Dane, 9; 7 Greenl. 96; 13 Maine R. 337; 16 Maine R. 60; 12 Pick. 534.

. If the demandant did not locate his acre of land within a reasonable time, his power to make the location was at an end; and the other party had the right to make the selection. 12 Pick. 120; 3 Stark. Ev. 109. Until the selection was made the parties were tenants in common, and so this action cannot be maintained. The levy of the execution on a particular acre, different from that demanded, as the property of the demandant, was a selection by him; and being acceded to by the tenant, was good, either as a selection or as a partition of the tenancy in common. 22 Pick. 316.

The demandant is estopped to deny the location of the land as described in the levy. The right to levy upon the demandant's interest in the land, involved the right to locate, or select; and the demandant was as much bound by the levy, as he would have been by a deed. And by redeeming the levy, the demandant assented to that location, and was bound by it. 19 Pick. 445; 18 Pick. 88; 24 Pick. 115; 16 Maine R. 146.

Where a party has so conducted himself, as to lead another into a reasonable belief of a fact, he is estopped to deny the fact afterwards. 21 Maine R. 130; 5 Metc. 478.

The demandant was bound to make the selection in a reasonable manner. He was to take a lot of land including the quarry, in a reasonable shape. He was not at liberty to destroy the residue of the land by running strips through it, or running a passage way from the quarry to the buildings, and so including them within the acre, as he has done.

*Moore,* for the demandant, contended that the deed gave him the right to select the acre any where within the prescribed limits, and in any shape, that he chose. But if he was bound so to make his location as to include a lime quarry, he had done it.

In giving a construction to a deed, every part is to be looked at, and the meaning is to be ascertained from such

Grover *v.* Drummond.

inspection. 19 Maine R. 115 ; 22 Maine R. 350. The Court will not look out of the deed, save where there is latent ambiguity. 2 Stark. Ev. 545. The evidence offered, therefore, is inadmissible.

The language of the deed is as broad as could be written. It gave the demandant the right to select his acre at any time, and in any manner, he chose, within the twenty acres. And he was at perfect liberty to select land covered with buildings, if he preferred that course. But, as before remarked, he has made his selection so as to include a limestone quarry, and so every part of the deed is complied with. The right of selection of the acre by Grover was a part of the description of the land, about which there can be neither doubt nor question.

The estate which passed by the deed of Drummond to Grover was a tenancy in common in the proportion of one acre in twenty, until the selection of the acre was made. A levy, therefore, upon a specific portion of the estate was wholly void, and could not affect the rights of any one. The creditor did not pretend to make any selection, and had no interest in the land to enable him to do it. If he could acquire this right by a levy, he should have extended his execution upon the undivided share, and then have made his selection. 9 Mass. R. 34 ; 12 Mass. R. 348.

The partition was, by the terms of the deed, to be made by the demandant " any where on my said farm," " to contain one acre, in such shape as the said Grover, or his assigns, may choose." Drummond had nothing to do with the partition ; and when the land was selected and run out, and notice thereof given to the tenant, the partition was completed, and the demandant became sole seized of the particular acre so selected. There was no time fixed in the deed when the selection should be made, and a delay to do it immediately was no waiver of the right of the grantee to do it. The tenant did not attempt the exercise of any supposed right of selection arising out of the delay, and the exercise of the right by the demandant before any claim by the tenant to do it, was certainly sufficiently early.

The rights contended for by the demandant, are not only given to him by the plain and explicit language of the deed, but are warranted by decided cases of the highest authority. He cited *Jackson* v. *Livingston*, 7 Wend. 136, as directly in point; *Corbin* v. *Jackson*, 14 Wend. 619; 4 Wend. 58; 6 Cowen, 706; 5 Cowen, 371; *Burghardt* v. *Turner*, 12 Pick. 538; and *Dygert* v. *Matthews*, 11 Wend. 35.

On a later day at the same term the opinion of the Court was given orally by TENNEY J.

The Judge first stated the facts and read the descriptive part of the deed; and then remarked, that to aid in giving a construction to a deed, parol evidence might rightly be introduced, to show the location and actual appearance of the land at the time of the conveyance, but was inadmissible, to show the sayings or doings of the parties, or either of them for that purpose.

The levies of the executions were upon a specific portion of the twenty acres, before any location of the acre had been made, or attempted to be made by any one. And the levies were void, and could not affect the rights of either party.

It is said in argument, that the delay of more than four years in making a selection of the acre, shows such laches on the part of the demandant, as destroys any right he might have had to locate his acre. We are inclined to think, that an unreasonable delay on the part of the demandant in making the selection, would amount to a waiver of his right, and leave the parties to settle the controversy in the mode pointed out by law; but on this point we give no opinion.

The decision of this question must be based upon the construction to be given to the deed, on an inspection of the whole of it, with the aid of such facts as are legally before us. True it is, that a conveyance of the twenty acres of land with a pertinent description of the boundaries thereof, would carry the buildings with the land, although not named in the deed. Buildings, however, are not land, but pass as fixtures. That is not the inquiry here, but whether the demandant has a right so to locate his acre of land as to run out and include

Grover *v.* Drummond.

the buildings. The right given in the deed was to select "a certain lot of land, situate on my home farm in Winslow," containing in the whole twenty acres, "to contain one acre, in such shape as the said Grover may choose," "said one acre is supposed to contain a ledge of limestone or marble." The demandant claims the right so to make his selection, as to take in a ledge of limestone or marble, although not the principal one upon the premises, and from thence to run a narrow strip of land to connect the quarry with the buildings, standing at a considerable distance therefrom, and include the land, whereon they, stand, within the acre. Such could never have been the understanding of the parties. And we are of opinion, that the law gives the demandant no right to select "the lot of land" in that manner. His title to the demanded premises, therefore fails.

According to the agreement of the parties, the demandant must become nonsuit.

Note by the Reporter. — At the June Term of this Court, 1846, Drummond presented a petition of which a copy follows : —

"To the Hon. the Justices of the Supreme Judicial Court.

"The said Drummond represents, that the aforesaid action against him was heard and finally determined at the June Term last of this Court, and judgment rendered in his favor for his costs ; that for the trial of said action at Nisi Prius, he, by the advice of his counsel, summoned witnesses to prove facts which he was advised were material to his defence ; that on opening the case to the jury and on his offering to prove said facts by the witnesses summoned as aforesaid, it was ruled by the Court, that the facts so offered to be proved were inadmissible and the testimony was rejected ; that in making up his costs he taxed the travel and attendance for the witnesses, which were allowed by the clerk, but on an appeal from the decision of the clerk to the Judge presiding, at the October Term last past of this Court, the said Judge decided that the costs of said witnesses could not be allowed, "because their testimony was not received, not being legal testimony." He therefore prays the Court here, that the costs of said witnesses may be allowed to him."

After a hearing of the counsel for the parties, it was said by the Court, that although the witnesses were summoned to prove certain facts under the direction of counsel, yet if the testimony they would have given on the trial was illegal and inadmissible, and therefore rejected, the expense of their attendance should not be taxed in the bill of costs against the other party.

The taxation of the travel and attendance of those witnesses was disallowed.

*Noyes,* for Drummond.

*Moor,* for Grover.